**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Charles Edward GAMMON,
Defendant–Appellant.**

**No. 91–1832.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 29, 1992.

Decided March 9, 1992.

As Amended March 18, 1992.

Sharon Jackson, Asst. U.S. Atty., Steven D. DeBrota (argued), Office of U.S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Steven A. Spence (argued), Arany & Spence, Indianapolis, Ind., for defendant-appellant.

Before FLAUM and KANNE, Circuit Judges, and PELL, Senior Circuit Judge.

FLAUM, Circuit Judge.

On January 15, 1991, a jury convicted Charles Edward Gammon of (1) armed

bank robbery in violation of 18 U.S.C. § 2113(a) and (d); (2) use of a weapon during a crime of violence in violation of 18 U.S.C. § 924(c); and (3) possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g). Gammon directly appeals both his conviction and sentence. We affirm.

In 1990, Gammon, masked to conceal his identity and armed with a .38 special snubnosed revolver, robbed a federally insured credit union. After demanding money and receiving $5,672, he fled the credit union on foot. A pursuit ensued, during which Gammon fired one shot. The credit union's branch manager, Lyle Stahly, ran after Gammon, and a bank customer chased Gammon in his car. During the chase, Gammon removed his mask as he ran by John Neal, a bystander. Gammon sought cover behind a trash dumpster on the playground of an elementary school which had just recessed. A student directed police officers to Gammon's hiding spot, where they found him underneath some trash bags with a mask, a gun, and the stolen money, including the bait bills. Immediately after Gammon was apprehended, the police conducted a show-up identification at which Neal and Stahly positively identified Gammon as the armed robber. He was then arrested and indicted for his conduct.

Before Gammon's jury trial began, the court granted his motion for separation of witnesses pursuant to Fed.R.Evid. 615(a). Despite the sequestration order, however, Neal remained in the courtroom during twenty minutes of Stahly's testimony on behalf of the government. After the government brought the violation of the order to the attention of the court and defense counsel, the defense motioned for exclusion of Neal's testimony. Following a hearing on the matter the court denied the motion, finding that Neal had violated the order inadvertently and that his testimony would not be affected by the fact that he heard Stahly's testimony. At trial, Neal positively identified Gammon as the man he saw fleeing the credit union.[1] Defense counsel cross-examined Neal on the violation of the witness separation order. The jury found Gammon guilty.

Gammon challenges his conviction on the ground that the district court erred in allowing Neal's testimony after the violation of Fed.R.Evid. 615. Gammon argues that by listening to Stahly's identification testimony, Neal was given the opportunity to mold his testimony to that of Stahly and therefore bolster the government's case. Rule 615 was designed to thwart witnesses from fashioning their testimony to that which has already been given and to help in detecting testimony that is less than truthful. *United States v. Hargrove,* 929 F.2d 316, 320 (7th Cir.1991) (citing *Geders v. United States,* 425 U.S. 80, 87, 96 S.Ct. 1330, 1334, 47 L.Ed.2d 592 (1976)). Absent evidence of prejudice, collusion, or willful violation, it was within the district court's sound discretion to allow Neal to testify. *United States v. Thomas,* 774 F.2d 807, 810 (7th Cir.1985). Here, there was no evidence of government collusion and the court found that Neal had inadvertently entered the courtroom during Stahly's testimony. Furthermore, at the exclusion hearing, defense counsel told the court that neither Neal's statements during a pre-trial interview nor his written statement to the FBI deviated from his proffered testimony. Thus, the district court did not abuse its discretion by allowing Neal's testimony.

Gammon next challenges the court's upward departure of his sentence. Under the Sentencing Guidelines, the district court initially determined an adjusted offense level of 22 and a criminal history category of III, yielding a sentencing range of 51–63 months. However, the court departed upward to criminal history category IV, reasoning that criminal history category III did not adequately reflect the seriousness and the extent of Gammon's criminal record or his propensity for committing

---

1. In addition to Stahly and Neal, Robbins, a customer at the credit union during the robbery, testified that she saw the robber's face as he fled and identified Gammon as the man who robbed the credit union. Credit union tellers identified the pillowcase, mask, and weapon found with Gammon after the robbery.

additional crimes in the future, and sentenced Gammon to 78 months imprisonment followed by five years supervised release.[2] We examine the departure to determine "whether it was reasonable in light of the district court's explanation for its departure at the time of sentencing." *United States v. Terry*, 930 F.2d 542, 544 (7th Cir.1991) (citations omitted). There are three steps to this determination: first, we review *de novo* the adequacy of the grounds stated by the district court for its departure; second, we determine, under a clearly erroneous standard, whether the grounds for departure actually exist in the record; and third, giving deference to the district court, we determine whether the magnitude of the departure was reasonable. *Id.*

Here, the district court identified three grounds for departure:

I will depart one level and allow for a one-level increase on the basis that the criminal history category does not fairly reflect the seriousness or the extent of the defendant's criminal record. It doesn't reflect the seriousness of that record as evidenced by the sheer number of juvenile offenses, and ... that the burglary that was a separate offense that occurred at or about the same time as the reckless homicide received no point consideration.... In addition, ... there were many other arrests that didn't result in final adjudications of a juvenile court, but that adds to the seriousness of his criminal record and his criminal history.

App. at 17–18. Gammon appeals each ground.

Gammon asserts that the district court could not rely on his theft conviction to justify the upward departure because it was related to his reckless homicide conviction, which the district court already had counted for purposes of his criminal history.[3] Gammon misunderstands the law. Although he is correct that, under the Guidelines, prior sentences levied in "related cases are to be treated as one sentence for purposes of" criminal history, *see* U.S.S.G. § 4A1.2(a)(2), and that "related cases" include sentences resulting from offenses that were consolidated for trial or sentencing, *id.* § 4A1.2, comment. (n. 3), as the Commission has acknowledged, its definition of "related cases" may be overbroad and in some instances cause a defendant's criminal history to inadequately represent his past record of criminal conduct. *See United States v. Connor*, 950 F.2d 1267, 1272 (7th Cir.1991) (citing U.S.S.G. § 4A1.2, comment. (n. 3) (1990)). Therefore, although the court may only count one of the "related cases" for the purpose of determining the defendant's criminal history, it can rely on the uncounted related case as a basis for departure.

Here, Gammon in 1984 killed an 11-year-old boy by recklessly pointing a loaded gun at the boy's chest and causing the rifle to discharge. He was tried as an adult and sentenced to seven years for reckless homicide. In 1985, Gammon was arrested for burglary and turned over to the adult court, where he pled guilty to the lesser included offense of theft. Gammon's theft conviction was then consolidated with his homicide conviction for sentencing. The district court added three points to Gammon's criminal history score for the homicide conviction, but did not count the theft conviction because it was "related" to the homicide conviction.[4] Had these cases not

---

**2.** In addition to the 78 months for the armed robbery, the district court sentenced Gammon to a mandatory consecutive 60 months for the use of a weapon conviction, for a total sentence of 138 months imprisonment.

**3.** Gammon also points out that the burglary arrest was dismissed. However, he fails to inform the court that it was dismissed because he pled guilty to the lesser included offense of theft. The court's reference to the dismissed burglary conviction, rather than the theft conviction, is simply a misstatement.

**4.** Gammon does not argue that the district court erred in finding that his reckless homicide conviction and the theft conviction were related cases. Thus, it is not necessary to discuss the standard of appellate review for the district court's finding that two cases are related. *See Connor*, 950 F.2d at 1270 (appropriate standard for reviewing a claim that two prior cases are related is an open question in the Seventh Circuit); *United States v. Ali*, 951 F.2d 827, 828 (7th Cir.1992) (same).

been combined for sentencing, Gammon would have received an additional two points to his criminal history category, *see* U.S.S.G. § 4A1.2(d)(2)(A), yielding a criminal history category of IV. *See* Sentencing Table, U.S.S.G. Ch. 5, Pt. A. Thus, Gammon's theft conviction was an appropriate ground for departure. *See Connor*, 950 F.2d at 1273 (departure justified where "[s]heer fortuity, rather than the conscious design of the Sentencing Commission, seemingly led to consolidation of certain charges, involving essentially unrelated crimes committed at widely divergent times" (quoting *United States v. Ocasio*, 914 F.2d 330, 335 (1st Cir.1990))).[5]

■ Gammon next contends that his eight juvenile convictions, which were excluded from his criminal history category because they were too old, *see* U.S.S.G. § 4A1.2(d) (excluding all juvenile adjudications imposed more than five years from the commencement of the instant offense), were an inappropriate ground for departure.[6] According to Gammon, the Sentencing Commission's consideration and exclusion of "old" juvenile adjudications under § 4A1.2(d) precludes the district court's use of his juvenile convictions as a basis for departure.[7]

Although Gammon does not cite to any case law, there is support for his contention. In *United States v. Samuels*, 938 F.2d 210, 214 (D.C.Cir.1991), the D.C. Circuit held that a juvenile sentence excluded from the criminal history calculation under § 4A1.2(d) may not justify a departure under § 4A1.3 unless it meets one of the two exceptions set forth in § 4A1.2, comment. (n. 8). Application Note 8 allows courts to use a prior sentence excluded because of age as a basis for departure if it is either conduct similar to the current offense or evidence of criminal livelihood. The court reasoned that the provisions contained in § 4A1.2 excluding foreign, tribal, and expunged convictions from the criminal history category explicitly allow such excluded sentences to be used for departure, *Samuels*, 938 F.2d at 215, while "[s]uch a declaration is conspicuously absent from the discussion of under-eighteen convictions in section 4A1.2(d)." *Id.*

Other courts, however, have allowed a departure based on excluded prior convictions where the defendant's penchant for crime as evidenced by his prior history of recidivism is a circumstance not adequately taken into account in determining his criminal history category. *See, e.g., United States v. Nichols*, 912 F.2d 598, 604 (2d Cir.1990) (violent juvenile record for which defendant received lenient treatment justified upward departure); *United States v. Russell*, 905 F.2d 1439, 1444 (10th Cir.1990) (upward departure using old excluded convictions justified on ground that, as a result of the Guidelines' 15-year limitation for felony convictions, defendant's criminal history was seriously underrepresented).

Recently, this court held that prior convictions excluded from the criminal history category because of age that are neither similar to the instant offense nor evidence of criminal livelihood may nevertheless be used for purposes of departure when they illustrate a significant history of criminality. *Connor*, 950 F.2d at 1274–75. As we noted in *Connor*, this court's holdings in *United States v. Terry*, 930 F.2d 542, 544–45 (7th Cir.1991) (19-year-old summary court-martial not an appropriate basis for departure) and *United States v. Fonner*, 920 F.2d 1330, 1334 (7th Cir.1990) (petty offense convictions excluded from the criminal history computation could not then be used as a basis for departure), "did not foreclose the possibility that departure would be appropriate even if old offenses were neither similar nor an evidence of criminal livelihood." *Connor*, 950 F.2d at 1274. Rather, in those cases, we simply

---

5. Gammon does not contend that the factual findings concerning his theft conviction contained in the presentence report and relied on by the district court are clearly erroneous. Therefore, we do not consider the reliability prong of the departure analysis.

6. All of Gammon's juvenile convictions occurred before 1984.

7. Congress has limited departures from the Guidelines to circumstances "not adequately taken into consideration" by the Commission. 18 U.S.C. § 3553(b).

emphasized the requirement that, in departing from the Guidelines, the sentencing court must identify some circumstances which the Commission has not sufficiently taken into consideration. *Id.* at 1274–75.

Gammon's juvenile convictions reveal a profound history of criminal misconduct. Gammon was convicted of burglary when he was eight years old. His next burglary conviction came two years later. At the age of 11, Gammon was convicted of theft; at 12, he was twice convicted of theft. At age 14, he was again convicted of burglary. At age 15, he was convicted of disorderly conduct and vandalism. Indeed, Gammon's life of crime came to a halt only when, at age 16, he was incarcerated for five years for the reckless homicide. A mere eight months after his release from prison on the reckless homicide, Gammon committed the instant offense. To limit Gammon's criminal history to the five years immediately preceding his present sentencing, when he has been confined for those five years, would not, as the district court recognized, adequately reflect the seriousness of Gammon's past criminal history or the likelihood that he will commit future crimes. *See id.* at 1274. The exclusion of Gammon's prior juvenile adjudications from his criminal history category would serve merely to obscure his serious history of criminality and the likelihood that he would commit crimes in the future. *Id.* Accordingly, we hold that the district court did not err in including Gammon's excluded juvenile convictions as a basis for departure.[8]

Finally, Gammon contends that the district court inappropriately relied on his juvenile arrest record as a ground for departure. In support, Gammon points to U.S.S.G. § 4A1.3(e), which allows a departure for prior similar adult conduct not resulting in conviction, and notes that his juvenile arrests were neither adult conduct nor conduct similar to his current crime. He also argues that the factual basis for this ground lacked reliability because the district court relied solely on an arrest record to infer that he committed the crimes, which is prohibited by § 4A1.3.

As Gammon points out, it is not clear whether the Guidelines permit consideration of non-adult, non-similar conduct for purposes of departure. *See United States v. Kim,* 896 F.2d 678, 686 n. 5 (2d Cir.1990) (suggesting that conduct not resulting in conviction must be both adult and similar to warrant a § 4A departure); *cf. United States v. Morrison,* 946 F.2d 484, 496 (7th Cir.1991) ("§ 4A1.3 is a backstop, designed to ensure that relevant conduct does not fall through unintended gaps in the Commission's broadly written calculation instructions."). *But see United States v. Keys,* 899 F.2d 983, 989 (10th Cir.1990) (rejecting defendant's contention that Guidelines § 4A prohibits the use of prior unrelated conduct as grounds for departure). Moreover, there is some question whether the Sentencing Commission could even consider juvenile conduct not leading to conviction to be "reliable information" due to the "differential availability of records" in each state concerning juvenile arrests. *See* U.S.S.G. § 4A1.2, comment. (n. 7).[9]

The district court's use of the prior juvenile arrests is also troubling because it relied solely on the information contained in the presentence report, which merely stated, "Mr. Gammon had the following juvenile arrests between the years 1975 to 1984: Burglary—twice, Theft—twice, Malicious Trespassing, and Battery with Injury." This information was not sufficient for the district court to rely on because it is analogous to an arrest record. "[A]n arrest record by itself cannot be 'reliable information' that defendant engaged in prior criminal conduct." *Terry,* 930 F.2d at 545–46 (departure upheld where district court did not rely solely on arrest records to establish prior similar adult conduct, but

---

8. Because Gammon does not challenge the reliability of the evidence contained in the presentence report concerning his juvenile convictions, we do not address the reliability factor of the departure analysis.

9. Under U.S.S.G. § 4A1.3 the district court may only consider "reliable" information of criminal conduct. *See Terry,* 930 F.2d at 545 (giving examples of reliable information).

also relied on police reports containing underlying facts of the arrests) (citing § 4A1.3). However, defense counsel did not challenge the accuracy of the information contained in the presentence report either in writing or orally at the sentencing hearing. Gammon cannot now challenge the district court's acceptance of such information as reliable. *See United States v. Gaddy*, 909 F.2d 196, 201 (7th Cir.1990); *Terry*, 930 F.2d at 546.

Nevertheless, we need not decide whether Gammon's juvenile conduct not leading to conviction was an improper ground on which to base a departure. Even without this ground, we find that the District Court would have imposed the same upward departure based upon Gammon's uncounted theft conviction and eight prior juvenile adjudications. *See Williams v. United States*, — U.S. —, 112 S.Ct. 1112, 1120, 117 L.Ed.2d 341 (1992). Although Gammon does not challenge the reasonableness of the departure, these grounds certainly warranted a departure from criminal history category III to IV. *See United States v. Ferra*, 900 F.2d 1057, 1062 (7th Cir.1990), *aff'd after remand*, 948 F.2d 352 (7th Cir.1991). Had the theft conviction and the eight prior juvenile convictions been counted towards Gammon's criminal history category, he could have received an additional 10 points, yielding a criminal history category of VI and a guideline range of 84–105 months.[10]

For the above reasons, Gammon's conviction and sentence are AFFIRMED.

---

**10.** The probation officer recommended that the    district court depart from category III to VI.